UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL L. HEATLY,

           Plaintiff,

-vs-                                                    Case No.  8:05-cv-1927-T-17EAJ

CPL. BRYANT, DEPUTY KAETZGER,

           Defendants.
_____

## **O R D E R**

      Pro se prisoner Plaintiff Daniel Heatly filed a 42 U.S.C. § 1983 civil rights complaint. Heatly was incarcerated at the Pinellas County Jail at the time the alleged events occurred. Plaintiff contends that Deputy Kaetzger #4940 violated his First and Fourteenth Amendment rights when she brought false disciplinary charges against Heatly in retaliation for seeking to file a grievance and had him punished. He alleges that Defendant Cpl. Bryant violated Plaintiff's First and fourteenth Amendment rights when he, "in comport" with the retaliatory actions of Deputy Kaetzger falsely deprived Plaintiff of his liberty and property without due process for seeking to file a grievance.

      Heatly requests that this Court take supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. § 1367. He alleges that Deputy Kaetzger #4940 knowingly and willfully bought false disciplinary charges again Heatly in retaliation for his seeking to file a grievance in violation of Florida Statutes, section 944.35.

      In support of his complaint, Plaintiff alleges the following facts:

(1) On July 9, 2005, deputy Kaetzger (Defendant) got into an altercation with an inmate over some shorts he had in his possession. During the exchange deputy Kaetzger threaten to shake-down the pod and seize every one's property whether they were authorized to have it or not, if the inmate didn't hand over the shorts, and he did.

(2) Around 7:00 or 8: a.m. Plaintiff (Daniel Heatly) was standing in the day-room when deputy Kaetzger, and Defendant (Cpl. Bryant) entered the pod through the side door with another officer and ordered everyone not to touch nothing and immediately exit the pod.

(3) When the Plaintiff and everyone else had complied deputy Kaetzger took a black bag and placed it up at the window to shield their activity.

(4) Once the search was finish [sic], the Plaintiff and other inmates were allowed back into the pod, wherein the Plaintiff went to his cell and found the sheets torn from his bunk and on the floor. His legal papers had been removed from his locker-box and thrown in disarray on the bunk.

(5) As the Plaintiff continued to look about he found his (Motion To Dismiss) which was to be filed in his pending criminal case ripped up on the floor at the foot of his bunk.

(6) The Plaintiff then filled out an 82# request form asking for an inmate grievance form in order to file grievance against Cpl. Bryant and deputy Kaetzger for destruction of his legal papers.

(7) Plaintiff asserts that the search conducted by Cpl. Bryant and deputy Kaetzger was not a nominal routine search; wherein inmates are required to take their county issued property, submit to search of their person and leave the pod. Instead, this was a reprisal search in comport with Deputy Kaetzger's earlier threat.

(8) After Cpl. Bryant had read Plaintiff's request for an inmate grievance form he called the Plaintiff out of the pod, and once the Plaintiff was in the hall Cpl. Bryant, deputy Kaetzger, and two other deputies for intimidation surrounded the Plaintiff.

(9) Cpl. Bryant then put his finger in Plaintiff's face and screamed that all Plaintiff do is file grievances and he's sick of the "shit." He also stated that Plaintiff couldn't file grievances [sic] concerning the destruction of his legal papers.

(10) On July 10, 2005, when Plaintiff didn't receive the grievance form he had requested on July 9, 2005, he submitted another 62# request form asking to be given an inmate grievance form.

(11) Deputy Kaetzger took the request and after reading it open the trop and screamed at the Plaintiff that he couldn't file grievance about his legal papers.

(12) When the Plaintiff responded that is wasn't for her to decide, she slammed the trap and left. But came back open the trap and told Plaintiff, "I'm not going to put up with your 'shit.' " She then ordered everyone to lock down which everyone did.

(13) After an hour deputy Kaetzger released all the other inmates from their cells, but kept the Plaintiff confined for four or five hours longer.

(14) During the period of Plaintiff's confinement deputy Kaetzger #4940 in retaliation for him seeking to exercise his right to file grievance against her and Cpl. Bryant knowingly and willfully filed a false disciplinary report against the Plaintiff.

(15) The Plaintiff was then relocated to 3FL, but refused to enter and sleep on the floor. Plaintiff was then placed in Administrative Segregation pending a disciplinary hearing.

(16) On July 16, 2005, Cpl. Bryant in comport with the retaliatory actions of deputy Kaetzger, conducted the disciplinary hearing himself to insure that Plaintiff be punished and deter him from filing grievances.

(17) During the hearing Cpl. Bryant based on his pre-conceived prejudice, and personal interest in the outcome of the proceeding found Plaintiff guilty.

(18) The disciplinary report was totally devoid of any evidence supporting deputy Kaetzger's claim that Plaintiff used abusive language toward her and the oral state was from someone not present at the hearing. (See Attach [sic] Exhibit A):

(19) Cpl. Bryant then gave Plaintiff 30 days in disciplinary confinement, with loss of phone, reading, and commissary privileges.

(20) Plaintiff appeal the decision and on 7/22/05 the Div. Commander affirmed Cpl. Bryant's decision, but suspended the remaining disciplinary time. (See Attach [sic] Appeal Exhibit B.

(21) As a result of the defendant's retaliatory actions, the Plaintiff suffered humiliation, weight loss caused by the unnecessary emotional distress unlawfully inflicted upon him.

Plaintiff seeks compensatory damages and punitive damages, and "any additional relief this Hon. Court deems just, proper, and equitable."

Defendants filed a motion to dismiss and Plaintiff filed a response to the motion to dismiss. In the motion to dismiss, Defendants point out that Plaintiff erroneously names Defendant Deputy Kretzer as "Defendant Kaetzger" and that Plaintiff erroneously names Defendant Cpl. Bryant as Defendant Cpl. Brabant." However, the Defendants use the names designated by Plaintiff in the motion to dismiss.

Only Defendant Kaetzger has been served. Plaintiff did not seek to serve the second defendant until February 19, 2006, more than 120 days after the complaint was filed.[1]

## STANDARD FOR MOTION TO DISMISS

In determining whether to grant a Fed. R. Civ. P. 12(b)(6) motion, the Court construes the complaint in the light most favorable to the plaintiff and its allegations are taken as true. See Roberts v. Florida Power & Light Co., 146 F.3d 1305,1307 (11th Cir. 1998), cert. denied, 525 U.S. 1139 (1999). While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, they need not accept factual claims that are internally inconsistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted

---

[1] On February 19, Plaintiff filed a motion to amend his complaint to name the proper defendants and to serve Cpl. William Brabant.

deductions; or mere legal conclusions asserted by a party. Ellen S. v. The Fla. Bd. of Bar Examrs, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994). See also, Marsh V. Butler County, Alabama, 268 F.3d 1014, 1036 (11th Clr. 2001) (finding that "[I]n the light of the usual pleading requirements of Fed. R. Civ. P. B(6), unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal) (citation omitted); Mass. School of Law at Andover v. American Bar Association, 142 F.3d 26, 40 (1st Cir.1998) (finding that a review court need not "swallow plaintiff's invective hook, line and sinker; bald assertions unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited"). In ruling on a motion to dismiss, courts may consider allegations contained in the complaint and any exhibits attached thereto. Fed. R. C. P. 12(b)(6); Fed. R. Civ. P. 10(c).

    A motion to dismiss will be denied unless it appears beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. See Roberts, 146 F.3d at 1307. It is only when the facts alleged, if proven, will not justify recovery that an order of dismissal under Rule 12(b)(6) is warranted. In the case of a pro se action, the Court should construe the complaint more liberally than it would formal pleadings drafted by lawyers. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, a pro se litigant is not excused from compliance with a Court order or other judicial or statutory deadlines. See Wayne v. Jarvis, 197 F.3d 1098, 1104 (11th Cir. 1999) (holding that "the problem here is not one of construction: instead, the problem is one of lack of compliance with a deadline imposed by law. Liberal construction does not mean liberal deadlines.").

After reading Plaintiff's complaint in a liberal fashion, the Court finds that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Therefore, Defendants' motion to dismiss will be granted.

## DISCUSSION

As noted in Heatly's Complaint, a disciplinary hearing was held in accordance with the Pinellas County Sheriff's Office Inmate Grievance Process. Based on the evidence presented at the hearing, where Plaintiff Heatly was permitted to present testimony, he was found guilty of being abusive toward Deputy Kaetzger. (Plaintiff's Compl., Ex. A, Dkt. 1). Plaintiff Heatly subsequently appealed the decision of the grievance committee. (Plaintiff's Compl., Ex. B, Dkt. 1). Upon reviewing Plaintiff Heatly's appeal, the Division Commander, Captain Jeffers, suspended the remaining time left for the disciplinary action pending Plaintiff Heatly's good behavior. See id. Plaintiff Heatly's complaint was further investigated by the Pinellas County Sheriff's Office Inspections Bureau by Sgt. Fletcher. (Defendants' Memorandum, Doc. No. 17, Ex. 1). Sgt. Fletcher's report found that Plaintiff Heatly's allegations were unsubstantiated. See id.

### FAILURE TO STATE A CLAIM THAT HIS FIRST AND FOURTEENTH AMENDMENT RIGHTS WERE VIOLATED UNDER FEDERAL OR STATE LAW

Plaintiff fails to state a cause of action under Federal law. In bringing this civil rights action pursuant to 42 U.S.C. § 1983, Plaintiff Heatly alleges that: (1) Defendant Kaetzger violated his First and Fourteenth Amendment rights when she brought false disciplinary charges against him; and (2) Defendant Bryant violated his First and Fourteenth

Amendment rights by denying him of his liberty and property without due process when the disciplinary charges against him were upheld and he was found guilty.

A Plaintiff is held to a heightened pleading standard requiring some factual detail to enable the Defendants to raise the defense of qualified immunity when bringing a civil rights action pursuant to 42 U.S.C. § 1983. GJR Investments, Inc. v. County of Escambia Florida, 132 F.3d 1359 (11th Cir. 1998). The facts, as alleged in Plaintiff Heatly's Complaint, merely represent vague and conclusory allegations of retaliation, which are insufficient to demonstrate a causal connection between the discipline and the alleged constitutional deprivation under the First and Fourteenth Amendments.

Plaintiff Heatly merely states that his constitutional rights were violated as a result of having a disciplinary action filed against him by Defendant Kaetzger. However, none of the facts demonstrate that the disciplinary action taken against Plaintiff Heatly was based on anything other than the fact that he engaged in prohibited inmate conduct that is subject to penalties in accordance with the Pinellas County Sheriff's Office Inmate Handbook. (Defendants' Memorandum, Doc. No. 17, Ex. 2, Sec. XX). Thus, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts generally will not prevent dismissal on a motion to dismiss. Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).

If Plaintiff Heatly intends to prove a 42 U.S.C. § 1983 conspiracy among the Defendants to retaliate against him he has failed because his Complaint does not show that the Defendants "reached an understanding" to deny Plaintiff Heatly of his rights and prove an actionable wrong to support a conspiracy. Raske v. Dugger, 819 F.Supp. 1046, 1054

(M.D. Fla. 1993) citing Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990). Furthermore, Plaintiff Heatly's Complaint does not set forth specific instances of conduct demonstrating conspiracy or retaliatory harassment by the Defendants. See id. Finally, Plaintiff Heatly does not show how the disciplinary action for his conduct violated his constitutional rights when upon reviewing his appeal, Captain Jeffers suspended the remaining disciplinary time he was due to serve pending good behavior. (Plaintiff's Compl., Ex. A, Dkt. 1).

While convicted prisoners do not forfeit all constitutional protection by reason of their conviction and confinement in prison, a prisoner's rights are not absolute. Bell v. Wolfish, 441 U.S. 520, 545 (1979); see also Shaw v. Murphy, 532 U.S. 223, 229 (2001). First Amendment rights may be limited by a number of considerations in the prison setting, including deterrence of crime, rehabilitation of prisoners, and institutional security. Pell v. Procunier, 417 U.S. 817, 822 (1974). A consideration such as institutional security may be achieved through random cell searches. Therefore, any requirement that searches be conducted pursuant to an established plan would undermine the effectiveness of such a search. Hudson v. Palmer, 468 U.S. 517, 529 (1984). Consequently, a prisoner retains only those First Amendment rights that are not inconsistent with their status as prisoners. Shaw, 532 U.S. at 229. Therefore, Plaintiff Heatly's allegation that the search conducted by Defendants was not a routine search is without merit. Searches of inmates' cells are within the discretionary authority of jail officials, particularly when performed for the purpose of institutional security.

The issue in the present case, as it relates to Plaintiff Heatly's allegations against the Defendants, is whether the disciplinary action taken against him was reasonably related to a legitimate penological interest. It is apparent from the disciplinary report that Plaintiff Heatly's conduct was abusive toward staff and fell within the purview of prohibited inmate conduct in that his behavior was disruptive and interfered with the security and orderly administration of the jail. (Plaintiff's Compl., Ex. A, Dkt. 1).

Actions which in themselves are not constitutionally impermissible but which are done in retaliation for filing lawsuits and administrative grievances violate both the inmate's right of access to the courts and the inmate's First Amendment rights. Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).

Thus, the issue in such a case becomes motive. It is necessary to determine whether there is a causal connection between a prisoner's First Amendment activity and the adverse action taken against him and whether the Defendant's motive is permissible or impermissible. Adams v. Wainwright, 875 F.2d 1536, 1537 (11th Cir. 1989). However, Plaintiff Heatly's Complaint fails to articulate what protected First Amendment activity he was engaged in at the time the disciplinary action was imposed against him.

In examining a retaliation claim, appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory". Robinson v. Boyd, No. 5:03CV25/MMP/MD, 2005 WL 1278136, at *3 (N.D. Fla. May 26, 2005). Because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce specific, nonconclusory factual allegations that establish improper motive causing cognizable injury. See id. Furthermore,

an inmate may not state a claim of retaliation where the discipline was imparted for acts that a prisoner was not entitled to perform. See id. at *4. In the present case Plaintiff Heatly's conduct was prohibited in accordance with the Inmate Discipline Rules of the Pinellas County Sheriff's Office.

To state a federal due process claim under the Fourteenth Amendment, a plaintiff is first required to demonstrate that he or she has a constitutionally protected property or liberty interest and that he or she was deprived of that interest without a constitutionally adequate process by a defendant acting under the color of state law. Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982). However, even if a Plaintiff has a constitutionally protected liberty or property interest, a Plaintiff may not have a maintainable claim because of the existence of adequate post-deprivation state remedies. See id.

The Due Process Clause is not violated by unauthorized negligent actions of state officials if the state makes available a meaningful post-deprivation remedy. Parrat v. Taylor, 451 U.S. 527 (1981). The U.S. Supreme Court further extended the holding in Parrat to include intentional acts of state officials, finding that even an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.

In the instant case, Plaintiff Heatly had adequate post-deprivation due process procedures that he could and did pursue. The Pinellas County Sheriff's Office has an inmate grievance procedure and an appeal process. As evidenced by Plaintiff Heatly's Complaint, he did in fact avail himself of that remedy pursuant to the inmate grievance

process at the Pinellas County Jail, pursuant to which, he was permitted to testify and call witnesses. Moreover, upon review of his appeal Captain Jeffers suspended the remaining time Plaintiff Heatly was supposed to serve. As such, Plaintiff fails to state a cause of action that the Defendants violated his Fourteenth Amendment rights by denying him of his liberty and property without due process.

Plaintiff Heatly similarly fails to state a claim for retaliation under state law. In Section VI of the Complaint, Plaintiff Heatly alleges that his First and Fourteenth Amendment Rights were violated by Defendant Bryant, and that Defendant Bryant furthered the retaliatory actions of Defendant Kaetzger, when he was deprived of his "liberty and property without due process, for seeking to file grievance". (Plaintiff's Compl. p. 8, Dkt. 1).

Plaintiff Heatly erroneously asserts that his state law retaliation claim for false disciplinary charges allegedly brought by Defendant Kaetzger against him is in violation of § 944.35, Fla. Stat. Based on the facts presented in his Complaint, Plaintiff Heatly fails to demonstrate how this particular statutory section is in any way relevant to a claim of retaliation. Florida Statute § 944.35, relates to the state correctional system and specifically referring to "Authorized use of force; malicious battery and sexual misconduct prohibited; reporting required; penalties. – ".

Pursuant to Fla. R. Civ. P. 1.140(b)(6), Plaintiff Heatly fails to state a claim upon which relief may be granted. Plaintiff Heatly's state law claim premised on retaliation contains a random reference to a state statute which in no way relates to the cause of action the facts in his Complaint seem to allege. While Plaintiff Heatly is a pro se plaintiff and is held to a less rigid standard than an attorney, he fails to allege sufficient facts in his

-11-

Complaint, particularly with respect to his state law claim, that would support the conclusion that he is entitled to the relief he seeks. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998); see also GJR Investments, Inc., 132 F.3d at 1369.

### DEFENDANTS ARE IMMUNE FROM SUIT FOR DAMAGES IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

Defendants are immune from liability in their official capacities.

Plaintiff Heatly sues Defendants Kaetzger and Bryant in both their official and individual capacities seeking both compensatory and punitive damages. To establish official capacity liability under 42 U.S.C. § 1983, there must be a policy or custom behind the deprivation of a federal right. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

A § 1983 claim filed against government officers in their official capacities is, in essence, a claim against the governmental entity of which the officer is an agent. See id. at 165. Moreover, as a matter of law, punitive damages are not recoverable in an official capacity § 1983 claim. City of Newport, et al. v. Fact Concerts, Inc., et al., 453 U.S. 247 (1981); see also Colvin v. McDougall, Sheriff of Lee County, 62 F.3d 1316 (11th Cir. 1995)(Eleventh Circuit held that punitive damages cannot be recovered from a sheriff in Florida in his official capacity). Thus, Plaintiff Heatly's suit against Deputies Kaetzger and Bryant in their official capacities constitutes a suit against the Pinellas County Sheriff's Office.

A governmental entity is not responsible for the unauthorized actions of its lower level employees unless the entity's final decision makers participated in establishing a policy or custom which, directly or indirectly, resulted in a constitutional violation. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Consequently, the Pinellas County

Sheriff's Office may not be held liable under § 1983 on the basis of respondeat superior.

In order to establish liability against the Defendants in their official capacities Plaintiff Heatly must establish either: (1) that the unconstitutional deprivation was the result of a decision rendered by a final policymaker; or (2) that he was injured as the result of an unconstitutional policy or custom implemented or ratified by the Sheriff's Office. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); see also, Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1480-81 (11th Cir. 1991).

Applying the aforementioned analysis to the present facts, it is evident that neither Defendant Kaetzger nor Defendant Bryant are the final policymaking officials for the Sheriff's Office. The Defendants' actions are subject to restriction and review by their commanding officers. Because neither of the Defendants have the final policymaking authority over the grievance process utilized by the Sheriff's Office, an official capacity § 1983 claim against both Defendants is inappropriate unless the Sheriff's Office has a custom which deprived Plaintiff Heatly of his constitutional rights.

Proof of § 1983 liability based on custom would require Plaintiff Heatly to establish a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law. Brown, 923 F.2d at 1481. A widespread practice is considered authorized by policymaking officials when they must have known about it but, failed to stop it. See id.

Plaintiff Heatly has failed to include any facts that show evidence of a widespread practice engaging in retaliation against inmates for filing grievances in violation of their First and Fourteenth Amendment rights. Moreover, he has failed to show that such practices

were known and ratified by Pinellas County Sheriff, Jim Coats, the final policymaker for the Sheriff's Office.

Accordingly, the § 1983 claim brought against the Defendants in their official capacities in unsubstantiated and subject to dismissal.

<u>Defendants are entitled to Qualified Immunity in their individual capacities.</u>

Qualified immunity affords government officials complete protection when sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have know. <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1346 (11th Cir. 2002). Entitlement to qualified immunity is the rule, rather than the exception. <u>Lassiter v. Alabama A & M University</u>, 28 F.3d 1146, 1149 (11th Cir. 1994). The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law. <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002).

An official's conduct is evaluated under an objective, reasonable standard when determining the application of qualified immunity. <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). Applying an objectively reasonable standard, a government official performing discretionary functions is protected if a reasonable official could have believed his conduct to be lawful in light of clearly established law and the information possessed by the official at the time of the conduct occurred. <u>Hardin v. Hayes</u>, 957 F.2d 845, 848 (11th Cir. 1992).

Specifically, a defendant must prove he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. <u>Hartsfield v. Lemacks</u>, 50

F.3d 950, 953 (11th Cir. 1995). If the defendant is able to meet this burden, the plaintiff must then show that the defendant violated clearly established law based on objective standards. Swint v. City of Wadley, 51 F.3d 988, 995 (11th Cir. 1995). The plaintiff can, in turn, satisfy this burden by demonstrating that the contours of the plaintiff's rights were so sufficiently clear that a reasonable government officer would have understood that his actions violated plaintiff's rights. See id.

Defendant Kaetzger was acting within the scope of her discretionary authority when she filed a disciplinary report against Heatly for being verbally abusive toward staff. The Pinellas County Sheriff's Office Inmate Handbook, Section XX., A, 4, specifically sets forth "Prohibited Conduct and Penalties" for inmates and the subsequent penalties that may be imposed against them for misconduct. (Defendants' Memorandum, Ex. 2). Moreover, the disciplinary committee or hearing officer may elect to impose a lesser penalty than what is prescribed under this section. In the instant case the Committee chose to impose 30 days detention which is consistent with Section XX., A, 4, "conduct which disrupts or interferes with the security or orderly running of the institution". See id.

Additionally, Plaintiff Heatly has failed to demonstrate Defendants violated clearly established law when Defendant Kaetzger filed a disciplinary action against him and when Defendant Bryant subsequently imposed the 30-day detention sentence against him. Hope v. Pelzer, 536 U.S. 730 (2002). Plaintiff Heatly has failed to present any evidence indicating that Defendants engaged in conduct that was contrary to their carrying out their discretionary duties. Thus, Defendants are entitled to qualified immunity with respect to Plaintiff Heatly's claims.

The Court notes that Plaintiff Heatly claims that Defendant Bryant conducted the disciplinary hearing himself in order to further the retaliatory actions of Defendant Kaetzger. However, the disciplinary referral received by Plaintiff Heatly was for his abusive language towards Deputy Kaetzger and did not involve Defendant Bryant at all. (Defendants' Ex. 1, to Doc. No. 17, p. 2). As found in Sgt. Fletcher's investigation of Plaintiff Heatly's appeal, because Defendant Bryant was not involved in the incident, there was no reason for him not to preside over the disciplinary hearing. See id.

Accordingly, the Court orders:

1. That Plaintiff's motion to amend the complaint to effect service on Defendant Brabant (Doc. No. 20) is denied.

2. That Defendants' motion to dismiss the complaint (Doc. No. 16) is granted.

The Clerk is directed to enter judgment against Plaintiff Heatly and to close this case.

ORDERED at Tampa, Florida, on March 1, 2006.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Daniel Heatly